11

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

DEC 3 1 2001

Michael N. Milby
Clerk of Court

RICARDO YBARRA, §
Petitioner, §
§
v. § CIVIL ACTION NO. B-01-132
§
JANIE COCKRELL, DIRECTOR, §
TEXAS DEPARTMENT OF CRIMINAL §
JUSTICE, INSTITUTIONAL DIVISION, §
Respondent. §

## REFUTAL TO RESPONDENT COCKRELL'S MOTION FOR SUMMARY JUDGMENT WITH BRIEF IN SUPPORT

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes, Petitioner, Ricardo Ybarra, and files this his motion of Refutal to Respondent Cockrell's Motion for Summary Judgment with Brief in Support.

### I.
### DENIAL

The Director have asserted allegations of fact that is not supported by the record; and asserted conclusions of law, that, is contrary to decisions rendered by the United States Supreme Court.

(pg. 1) of (16)

## II.
## STATEMENT OF CASE

The Director has unlawful custody of Ybarra pursuant to a judgment and sentence in the 357th District Court of Cameron County, Texas, in cause number 99-CR-1058-E, styled The State of Texas v. Ricardo Ybarra. Ybarra was charged with the felony offense of robbery.

Ybarra, legally incompetent, was deprived of a pretrial competency hearing, ~~but a~~ upon his request, from his attorney. Ybarra, who did not understand the charge against him, was coersed by his counsel into pleading guilty to the charge of robbery, the court sentenced him to ten years imprisonment in TDCJ-ID

## III.
## PETITIONERS ALLEGATIONS

1) Ybarra was deprived of an effective assistance of counsel when his trial counsel failed to: a) pursue a pre-trial competency hearing; b) failed to investigate the facts and laws of the case, and failed to inform him of the necessity defense; c) pursue a pre-trial suppression hearing for illegally gained evidence pursuant to an unlawful search of his vehicle; and

2) His guilty plea was unknowing and involuntary.

(pg.2) of (10)

# IV

## STATEMENT OF FACTS

On May 23, 1999, Daniel Cedars, a private citizen, acting as a loss prevention officer, at Albertsons store, pursued after Ybarra without witnessing any felony or any offense against the public peace, and entered his vehicle without his permission, and against his will, for the purpose of an unlawful search and unlawful investigative detention. Ybarra requested that Cedars cease the search and exit his vehicle, however, Cedars would not yield to the demand. Cedars then ~~feared~~ attempted to seize Ybarra's keys from the ignition, to detain Ybarra for an unlawful detention.

Ybarra then acting, as a necessity to protect the rights of his person and property from imminent harm, attempted to free his vehicle from an unlawful interference, and his person from an unlawful investigative detention or arrest, by using the necessary force to rid Cedars of his vehicle.

Ybarra's counsel was ineffective in his failure to pursue a pretrial competency hearing, upon request. Upon the commission of the alledged offense, Ybarra was an out patient at Tropical Texas, a mental institution, and under the influence of various psychological medications prescribed by Dr. Bacon, Ybarra's psychiatrist. Ybarra was not legally competent upon the alledged commission of said offense, nor was he legally competent to stand trial and to assist in his own defense.

Ybarra's counsel did not actually and substantially assist him in deciding to plead guilty, by failing to inform him of the "necessity defense", the only viable defense to this prosecution. Counsel futhur failed to pursue a pretrial suppression hearing to suppress evidence secured during the unlawful detention and search of Ybarras vehicle.

Incorporated in this Motion three (3) witness statements as Appendix A.

(pg. 3) of (10)

# V

## REFUTAL TO MOTION FOR SUMMARY JUDGMENT WITH BRIEF IN SUPPORT

### A. Standard of Review

A party moving for summary judgment bears the burden of informing the Court of the basis for it's motion and identifying pleadings and other record evidence demonstrating the absence of any genuine issues of material fact; Respondent Cockrell has failed to meet that burden.

Under the amended §2254(d), Ybarra may obtain federal habeas corpus relief with respect to —

(1) merits of the factual dispute that were not resolved in the state court hearing;

(2) that the fact finding procedure employed by the state court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the state court hearing;

(6) that the applicant did not receive a full, fair, and adequate hearing in the state court proceeding;

(7) that the applicant was otherwise denied due process of law in state court proceeding;

(8) that part of the record of the state court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a

(pg. 4) of (10)

consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record; or

(9) any claim which was adjudicated on the merits in state court proceeding that:

(a) resulted in decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme court of the United States; or

(b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

B. YBARRA WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL, FOR FAILURE; TO SUPPRESS ASSAULT; AND TO INFORM HIM OF "NECESSITY DEFENSE"

Ybarra neither committed a felony nor an offense against the public peace, in the presence or within the view of ~~the~~ Mrs. Cedars, which would authorize a private citizen to make a detention or warrantless arrest pursuant to <u>Tex. Code Crim. Proc. Art. 14.01(a)</u>; <u>Heck v. State (CF. App. 1974) 507 S.W. 2d 737</u>. Furthermore, <u>Art. 14.01(a) of T.C.C.P</u> does not include the right of a private citizen to pursue and arrest for the purpose of insuring apprehension or future trial of the offender. <u>Woods v. State (1948) 152 Cr. R. 338, 213 S.W.2d 685</u>; and <u>Young v. State 957 S.W.2d 923, 925 (1997)</u>.

(pg 5) of (16)

Moreover, a private citizen does not have the authority to conduct a stop for purposes of investigation. V.A.C.C.P. 14.01(a); Garner v. State (App. 2 Dist. 1989) 779 S.W.2d 498, petition for discretionary review refused 785 S.W.2d 158.

Under Texas law, evidence obtained by an officer or other person in violation of the law shall not be admitted. Art. 38.23 V.A.C.C.P. Wherefore, evidence of the assault that occurred when Ybarra forced Mr. Cedar out of his vehicle, was obtained as a result of an unlawful detention and should not be admitted. Garner v. State (App. 2 Dist. 1989) 779 S.W.2d 498, petition for discretionary review refused 785 S.W. 2d 158. Counsel ineffective for failing to suppress assault.

Chapter nine of the Texas Penal Code is entitled "Justification Excluding Criminal Responsibility." It includes justifications such as necessity and public duty, and explains the justification aspects of protection of persons and property. Section 9.02 explains that "It is a defense to prosecution that conduct in question is justified under this chapter." "[W]hen the necessity defense applies, it justifies the defendant's conduct in violating the literal language of the criminal law and so the defendant is not guilty of the crime in question." WAYNE R. LAFAVE and AUSTIN W. SCOTT, JR., CRIMINAL LAW §5.4(a) (2d ed. 1986, Supp. 1993).

Upon Mr. Cedar's unlawful entry into Ybarra's vehicle, with the attempt to apprehend him for an unlawful detention, and unlawful search of his vehicle, Ybarra had the legal right to use all force necessary to extricate himself from an illegal citizen's

(pg. 6) of (10)

detention. Lester v. State, 448 S.W.2d 427, 431 (Tex. Crim. App. 1973); and Young v. State 957 S.W.2d 923 (1997). In Furban v. State 492 S.W.2d 516 (Tex. Crim. App. 1973), the Court of Criminal Appeals stated that, although every citizen has a duty to submit to lawful arrest, he is not required to submit to an unauthorized or unlawful arrest. (Id. at 518). A person who is threatened with an unlawful arrest or false imprisonment may resort to his right of resistance (Id., quoting 6 Tex. Jur. 2d § 52 (1980). "[A] person has a right ... to extricate himself from an illegal arrest and to use such force and such means as are available to him at the time and as appear to him to be necessary to obtain that end. (Id.) The right to defend against an unlawful ~~depredatation~~ deprivation of liberty is but a part of or an extension of the law of self-defense. (Furban, 492 S.W.2d at 518). Ybarra, freed himself from an unlawful detention. Young v. State 957 S.W.2d 923 (1997).

Moreover, Ybarra acting pursuant to Texas Penal Code art. 9.41(a) who was in lawful possession of his vehicle, was justified in using force against ~~the security~~ Mr. Cedars to remove him form the interior of his vehicle to terminate the unlawful interference of his property.

Had counsel informed Ybarra of the "necessity defense" he would not have plead guilty and insisted upon a jury trial. There's a great probability had Ybarra a jury trial, the jury would have found he acted as a "necessity" to defend his person and property from an unlawful interference, for he neither committed a felony nor disrupted public peace, which would have allowed Mr. Cedars to make a citizen's arrest, and the jury would have found Ybarra not guilty for robbery, for the alleged assault was an act of necessity.

C. YBARRA WAS DENIED DUE PROCESS OF LAW AND EQUAL PROTECTION OF LAW IN STATE COURT PROCEEDINGS.

Ybarra's counsel was ineffective for failing to pursue a separate hearing for determination of competency. Upon the commission of the alledged offense, Ybarra was an out patient at Tropical Texas, a mental institution, and under the influence of psychological medications prescribed by Dr. Bacon, Ybarra's psychiatrist. Ybarra was not legally competent upon the alledged commission of said offense, nor was he legally competent to stand trial and to assist in his own defense. Ybarra's counsel knew, before trial, of his psychological infirmities and that he was an outpatient of a mental institution under psychological care.

However, Ybarra's counsel knowing that he was incapable of understanding the nature of the charge against him, and unable to assist in his own defense (from repeated conversations with him), coerced him into signing a "Written Waiver and Consent to Stipulation of Testimony, Waiver of Jury, and Plea of Guilt," ~~Ex parte~~ causing him to commit perjury, unaware of his doings, during the courts admonishment in open court and in writing, in pertinent part, as follows:

> 1. I have never been treated for any mental illness and no one has ever suggested that I should receive treatment for any mental illness; I believe myself to be mentally competent now and sane at the time of the commission of the offense;

(pg. 8) of (10)

Ybarra's signing of the above mentioned documents is evident proof that the guilty plea was not "knowingly" and "intelligently" made.

A "Written waiver of rights, and Plea of Guilty" in itself does not safeguard that an accused is legally competent to assist in his own defense. Minimum standard allowable to ~~prevent~~ protect right of accused not to be compelled to stand trial while he is not legally competent to assist in his own defense must include a separate hearing for determination of competency. <u>Vernon's Ann. C.C.P. art. 46.02 §4(a); Martin v. Estelle, 546 F.2d 177, Certiorari denied 97 S.Ct. 2435, 431 U.S. 971, 53 L.Ed.2d 1069, appeal after remand 583 F.2d 1373</u>.

A preliminary hearing to determine competency is ancillary to the main criminal proceeding. <u>Vernon's Ann. C.C.P. arts. 44.02, ~~to~~ 46.02; Vernon's Ann. St. Const. Art. 5, §5, Jackson v. State, 548 S.W.2d 685</u>. Moreover, an accused is not required to prove actual insanity or incompetency before trial judge is required to conduct separate hearing on matter. <u>Vernon's Ann. Texas C.C.P. art. 46.02; Ruiz v. State, 660 S.W.2d 633, review granted reversed 770 S.W.2d 570</u>.

Counsel having knowledge of Ybarra's psychological impediment prior to the trial, was ineffective in failing to pursue a pre-trial competency hearing, depriving him of due process and equal protection of the law.

(pg. 9) of (10)

## VI
## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Ybarra respectfully requests this petition for writ of habeas corpus be granted.

Respectfully submitted,

Ricardo Ybarra

## CERTIFICATE OF SERVICE

I, Ricardo Ybarra, do hereby certify that a true and correct copy of the above foregoing Refutal to Respondent Cockrell's Motion For Summary Judgment with Brief In Support has been served by placing same in the ~~Lopez~~ a TDCJ-ID mailing system, postage prepaid, on this the 24th day of December, 2001, addressed to: Gretchen B. Merenda, P.O. Box 12548, Capitol Station, Austin, Texas 78711

# APPENDIX A

Case Number: 13993016730

JESSE G. PINALES _____ 4394 _____  _____ _____
        Officer              Emp. #       Supervisor       Emp. #

     ON THIS DAY, 05231999, REPORTING OFFICER WAS DISPATCHED TO 3351 BOCA CHICA BLVD (ALBERTSONS) IN REFERENCE TO A CALL INVOLVING A THEFT OF MERCHANDISE. UPON ARRIVAL, THIS OFFICER MADE CONTACT WITH THE COMPLAINANT WHOM IDENTIFIED HIMSELF AS DANIEL CEDARS 07301953 (LOSS PREVENTION OFFICER). MR CEDARS STATED THAT ON THIS DAY, WHILE DOING SURVEILLANCE FOR THE ALBERTSONS STORE (WATCHING SURVEILLANCE CAMERAS), HE OBSERVED THAT A HISPANIC MALE SUBJECT WHOM WAS WEARING A GRAY SHIRT OVER BLACK PANTS ENTERED THE STORE. MR CEDARS STATED THAT THE SAID SUBJECT (ABOUT 25 YRS OF AGE, 5'10" IN HEIGHT, AND ABOUT 200 LBS IN WEIGHT) WALKED INSIDE THE STORE AND HE PROCEEDED TO GRAB SEVERAL ASST. STAR WARS CANDIES FROM ONE OF THE DISPLAYS.

     MR. CEDARS STATED THAT AS THE SAID SUBJECT CARRIED THE CANDIES IN HIS HANDS, IT CAUGHT HIS ATTENTION BECAUSE THE SUBJECT WAS ACTING EXTREMELY SUSPICIOUS. MR. CEDARS STATED THAT, AT THE TIME, THE UNKNOWN **SUBJECT WAS WEARING NO SHOES AND THAT HE WAS ALSO LOOKING** IN ALL DIRECTIONS AS IF HE WAS UP TO SOMETHING. MR. CEDARS STATED THAT IT WAS THEN THAT THE SAID SUBJECT WENT BEHIND ONE OF THE DISPLAYS WHERE HE CONCEALED THE SAID CANDIES IN HIS CLOTHING BECAUSE WHEN HE CAME OUT, HE NO LONGER HAD THE CANDIES ON HIS HANDS. MR. CEDARS STATED THAT THE SAID SUBJECT THEN WALKED TOWARDS THE FRONT OF THE STORE, WHERE HE EXITED AND NEVER MADE AN ATTEMPT TO PAY FOR THE SAID MERCHANDISE, AND THEN APPROACHED A WHITE VEHICLE WHICH WAS PARKED BY THE MAIN ENTRANCE.

     MR CEDARS STATED THAT THE SUBJECT THEN OPEN THE PASSENGER DOOR TO THE SAID VEHICLE (A WHITE 1990 DODGE CARAVAN BEARING TX LPS C79JNK) AND HE PROCEEDED TO CONCEAL THE MERCHANDISE (STAR WARS SPIN POP CANDIES) INSIDE A COMPARTMENT LOCATED UNDER THE FRONT PASSENGER SEAT.

     MR. CEDARS STATED THAT AFTER OBSERVING THIS ON THE SURVEILLANCE CAMERA, THAT HE EXITED THE STORE AND PROCEEDED TO IDENTIFY HIMSELF TO THE SAID SUBJECT AS THE LOSS PREVENTION OFFICER FOR THE ALBERTSONS STORE. MR. CEDARS STATED THAT HE PROCEEDED TO ASK THE SAID SUBJECT FOR THE CANDY (MERCHANDISE) HE HAD STOLEN FROM INSIDE THE STORE. MR. CEDARS STATED THAT THE SAID SUBJECT RESPONDED BY SAYING, "I DO NOT KNOW WHAT YOU ARE TALKING ABOUT, I HAVE NOT STOLEN ANYTHING." MR. CEDARS STATED THAT SINCE THE PASSENGER DOOR TO THE SUSPECT VEHICLE WAS OPEN THAT HE PROCEEDED TO REACH UNDER THE FRONT PASSENGER SEAT TO ATTEMPT TO RECOVER THE STOLEN MERCHANDISE.

     MR. CEDAR STATED THAT IT WAS THEN THAT THE UNKNOWN SUBJECT PROCEEDED TO ENTER THE VEHICLE, THROUGH THE PASSENGER FRONT DOOR, WHERE HE MADE HIS WAY INTO THE DRIVER SIDE SEAT. MR. CEDAR STATED THAT THE SAID SUBJECT THEN PROCEEDED TO TURN ON THE VEHICLE, AT WHICH POINT, HE ATTEMPTED TO GRABBED THE KEYS WHICH WERE IN THE IGNITION. MR. CEDARS STATED THAT THE SUBJECT PLACED THE VEHICLE IN DRIVE AND AT THE SAME TIME HE (SUSPECT) BEGAN TO HIT HIM ON HIS HANDS AS HE (CEDARS) WAS TILL REACHING FOR THE KEYS. MR. CEDARS STATED THAT THE SAID SUBJECT THEN PROCEEDED TO KICK HIM SEVERAL TIMES, AS HE LAID ACROSS THE PASSENGER SEAT ATTEMPTING TO STOP THE SUBJECT FROM TAKING THE MERCHANDISE.

37

MR. CEDARS STATED THAT AT THE TIME OF THE INCIDENT, HE COULD HEAR AND FEEL THAT THE VEHICLE WAS IN MOTION AND THAT ANOTHER SUBJECT (UNKNOWN) WAS SCREAMING, AT THE DRIVER (SUSPECT), "DON'T DO IT". MR. CEDAR STATED THAT THE SAID SUBJECT THEN PROCEEDED TO CONTINUE DRIVING (IN MOTION) WHERE HE EXITED THE ALBERTSONS PARKING LOT AND ENTERED BOCA CHICA BLVD WHERE HE PROCEEDED TO TRAVEL WEST BOUND. MR. CEDAR STATED, THAT AFTER SEEING THAT HE COULD NOT STOP THE UNKNOWN SUSPECT, THAT HE TOLD HIM, "JUST DROP ME OFF, LET ME GET OF THE VEHICLE". MR. CEDARS STATED THAT AT THE TIME OF THE INCIDENT THAT HE FEARED FOR HIS LIFE, AND THAT HE WAS PLACED IN FEAR OF IMMINENT BODILY INJURY AND THAT ALL HE WANTED WAS TO GET OFF THE VEHICLE. MR. CEDAR STATED THAT IT WAS THEN THAT THE UNKNOWN SUBJECT PROCEEDED TO ENTER THE PARKING LOT OF THE NORWEST BANK (3310 BOCA CHICA) WHERE HE GAVE HIM AN OPPORTUNITY TO EXIT THE VEHICLE (VAN). MR. CEDARS STATED THAT IT WAS THEN THAT HE EXITED THE VEHICLE WHERE HE RETURNED TO THE STORE TO FILE THE COMPLAINT.

MR CEDAR STATED THAT DUE TO THE THEFT, HE HAD RECEIVED A CONTUSION TO HIS LEFT HAND AND TO THE LEFT PART OF HIS FACE (CHIN AREA). WHILE INTERVIEWING MR. CEDARS, THIS OFFICER THEN PROCEEDED TO OBSERVED THAT MR. CEDARS DID, IN FACT, HAVE THE SAID CONTUSIONS. MR. CEDAR ALSO STATED THAT HE HAD NEVER GIVEN THE SAID SUBJECTS PERMISSION TO TAKE THE SAID MERCHANDISE AND THAT HE WISHED TO FILE CRIMINAL CHARGES AGAINST THE UNKNOWN PERPETRATORS FOR COMMITTING THE SAID OFFENSE.

AT THE LOCATION, THIS OFFICER ALSO MADE CONTACT WITH A MR. ROBERT TORRES (08181979) WHOM PROCEEDED TO ADVISE THIS OFFICER THAT HE HAD WITNESSED THE THEFT. MR. TORRES STATED THAT WHEN THE INCIDENT WAS TAKING PLACE, THAT HE EXITED THE STORE TO ASSIST MR. CEDARS AND THAT IT WAS THEN THAT HE NOTICED THAT MR. CEDARS WAS ATTEMPTING TO DETAIN THE UNKNOWN SUBJECT. MR. TORRES STATED THAT HE WAS TOLD BY MR. CEDARS TO WRITE THE LICENSE PLATES TO THE SUSPECT VEHICLE, AND THAT IT WAS THEN THAT THE SUSPECT VEHICLE LEFT THE LOCATION TAKING WITH THEM MR. CEDARS.

THIS OFFICER THEN PROCEEDED TO MAKE CONTACT WITH SGT. M. ELBERT #2793 AND ADVISED HIM OF THE SAID INCIDENT. AS PER SGT M. ELBERT #2793 THIS OFFICER WAS ADVISED TO FILE THE OFFENSE REPORT OVER THIS MATTER AND TO REFER THE CASE TO CID FOR FURTHER ACTION. NO OTHER INFORMATION PROVIDED.

NOTE: AT THE LOCATION (ALBERTSONS) THIS OFFICER WAS ABLE TO PHOTOGRAPH THE INJURIES TO THE SAID VICTIM, AND ATTACHED THEM TO THIS REPORT FOR DOCUMENTATION PURPOSES.

COUNTY OF [CAMERON]

BEFORE ME, THE UNDERSIGNED AUTHORITY ON THIS DAY AND FOR THE [PURPOSE]
STATED, ON THIS THE ___ DAY OF JULY ___, A.D., [2001],
PERSONALLY APPEARED ROBERTO TORRES, WHO AFTER
BEING DULY SWORN, DEPOSED AND SAYS: MY NAME IS ROBERTO TORRES AND
MY DATE OF BIRTH IS 08-18-79. MY ADDRESS IS 8335
[SIMON] BLVD. BROWNSVILLE, TEXAS. MY PHONE NUMBER
540-5434.

THIS AFTERNOON I WAS CONTACTED BY DETECTIVE CARREJO IN REGARDS TO A
ROBBERY THAT HAPPENED AT THE [STORE]. DETECTIVE CARREJO
TOLD ME I HAD BEEN IDENTIFIED AS A WITNESS FOR THE ARREST OF THE
[SUSPECT ...]
I WAS NOT [AWARE ...]
WHEN I LEFT THE STORE [I ...] WALKING TO A VAN PARKED IN FRONT
OF THE STORE BY THE FIRE LANE. I STOPPED TO WHAT THE SECURITY WAS
DOING AND I OVERHEAD HIM TELLING A GUY WHO WAS SAT ON THE PASSENGER
THAT HE (MR. CEDARS) WAS A SECURITY FOR THE STORE. I THEN [HEARD HIM]
TELL THE OCCUPANT OF THE VAN THAT HE NEEDED TO TALK TO HIM ABOUT SOME
STAR WAR ITEMS HE HAD TAKEN FROM THE STORE. THE GUY WHO WAS BUILT
WITH TATTOOS AND HAVING NO HAIR WITH A MUSTACHE WOULD TELL MR. CEDARS
HE WAS SORRY THAT HE WAS NOT [TAKING] ANY ITEM FROM THE STORE. MR.
CEDARS INSISTED THAT HE [NEEDED TO TALK] WITH HIM AND THE GUY REFUSED.
MR. CEDAR THEN OPENED THE PASSENGER DOOR AND THE DRIVER POINTED TO
THE DRIVER'S SIDE SEAT. MR. CEDARS HAD LEANED ALMOST ALL HIS BODY
INSIDE THE VAN AS HE CONTINUED [...] TO [...] THE [SUSPECT] TO
[GO ADMIT] THE ITEMS HE HAD TAKEN FROM THE STORE. THE GUY [TOLD MR.]
CEDARS TO GET OFF THE VAN AND MR. CEDARS TOLD HIM HE WOULD NOT UNTIL
HE TOLD HIM [...]. THE GUY SAID FINE AND THE NEXT THING I KNEW HE WAS
[LEAVING ...] CEDARS INSIDE THE VAN. AS THE VAN DROVE BY [ME]
I COULD SEE THROUGH THE VAN'S REAR WINDOW MR. CEDAR TRYING TO TURN
OFF THE VEHICLE. I WAS RUNNING AFTER THE VAN TRYING TO SEE WHERE MR.
CEDARS WAS BEING TAKEN TOOK. I SAW THE GUY SWINGING HIS ARMS AT MR.
CEDARS AS IF HE WAS TRYING TO HIT HIM. MR. CEDARS WOULD RAISED HIS
HAND LIKE TO DEFEND HIMSELF AND HE ALSO TRYING TO GET THE VEHICLE
KEYS. I HAVE TOLD DETECTIVE CARREJO AS THE VAN WAS DRIVING OFF AT A
HIGH SPEED INSIDE THE PARKING THE DRIVER ALSO RAN OVER AN OLDER LADY
WHO WAS PUSHING A SHOPPING CART. I CONTINUED TO CHASE AFTER THE VAN
AND IT MADE AN ABRUPT STOPPED BEFORE EXITING THE PARKING ON THE BOCA
[CHICA SIDE]. I RAN UP TO THE DRIVER SIDE OF THE VAN TAKING A GOOD LOOK
AT THE SUBJECT. I THEN HEARD MR. CEDARS TELLING THE DRIVER TO LET HIM
OFF THE VAN BUT THE GUY KEPT THE VAN MOVING AND HE WAS YELLING TO MR.
CEDARS "I AM NOT GOING TO LET YOU DOWN MOTHER FUCKER". AND [THE GUY]
WHO WAS IN THE REAR PASSENGER SEAT WAS ALSO TELLING THE DRIVER TO LET
MR. CEDARS DOWN. MR. CEDARS INSISTED THAT HE STOP THE VAN TO GET OFF
BUT INSTEAD THE DRIVER SPED OFF CROSSING BOCA CHICA BLVD. TOWARDS THE
COASTAL BANK. I CHASED AFTER THE VAN CROSSING THE BOCA CHICA BLVD.
ALSO. THE VAN STOPPED AS I CAUGHT UP TO IT RUNNING TOWARDS THE
PASSENGER SIDE. MR. CEDARS. MR. CEDARS OPENED THE DOOR AND IT LOOKED
LIKE HE HAD BEEN PUSHED OFF THE VAN BECAUSE HE ALMOST FELL AS HE WAS
GETTING OFF. I GRABBED BY THE ARM AND HELP HIM GET UP. I ASKED HIM IF
HE WAS O.K. AND HE SAID HE WAS. MR. CEDARS TOLD ME TO WRITE DOWN THE
VAN'S PLATES WHICH I LATER GAVE TO THE POLICE WHO TOOK THE REPORT

42

I AM ROBERTO CARLOS [illegible] ... [illegible]
IDENTIFIED BY [illegible] ... WHO WAS [illegible] ...
ABOUT [illegible] ... I REMEMBER I HAVE [illegible]
STATEMENT AND [illegible] TO BE TRUE AND CORRECT

_Roberto Carlos Torres_
VICTIM OR WITNESS SIGNATURE

SWORN AND SUBSCRIBED [illegible] BEFORE ME, THE UNDERSIGNED AUTHORITY IN AND
FOR SAID COUNTY AND STATE, ON THIS THE 15TH DAY OF _July_ __
A.D., 19 99

_[signature]_
NOTARY PUBLIC IN AND FOR [illegible] COUNTY
STATE OF TEXAS

**RENE I. CARREJO**
Notary Public
State of Texas
My Comm. Exp. 01-02-00

43

[Illegible Miranda warning text with handwritten "RY" initials throughout]

MY NAME IS EDUARDO YBARRA AND MY DATE
OF BIRTH IS [illegible]. MY ADDRESS IS [illegible]
PUNTA LUCIA DR. IN BROWNSVILLE, TEXAS
MY PHONE NUMBER IS 541-6140

THIS AFTERNOON, 07-08-99, I WAS CONTACTED BY DETECTIVE RAM CARREJO AT THE BROWNSVILLE [illegible] IN REGARDS TO AN INCIDENT THAT OCCURRED AT THE ALBERTSON'S STORE LOCATED BY FOUR CORNERS. ON 06-29-99, I WAS OFF IN MY WIFE'S 1990 PLYMOUTH VOYAGER WHITE VAN WITH MY SEVEN YEAR OLD SON MICHAEL AND MY NEPHEW STEVE NELSON WHO LIVES ON [illegible] WHEN I DECIDED TO GO INTO ALBERTSON'S AND TAKE TWO [illegible] AND I GO TOWARDS THE [illegible] TO THE [illegible] AND WENT [illegible] OUT THE STORE WITHOUT PAYING FOR [illegible]. I TOOK [illegible] WITH ME AND WE WALKED OUT TO THE [illegible] DEPARTMENT WHERE I TOOK [illegible] OUT OF THE BOX [illegible] I PLACED THEM IN THE WAISTBAND OF MY SHIRT AND STARTED TO WALK OUT. WE WALKED OUTSIDE THE STORE TOWARD THE PASSENGER SIDE OF THE VAN. I OPENED THE VAN'S SIDE DOOR AND PROCEEDED TO GIVE HIM MICHAEL ONE OF THE CANDIES. THE OTHER(S) I PLACED IN THE PASSENGER SEAT GLOVE BOX. I THEN SAT ON THE PASSENGER SEAT WHEN I SAW THE SECURITY GUARD WALKING TOWARD THE VAN. I THEN PROCEEDED TO CLOSE THE DOOR AS THE SECURITY SHOWED ME A BADGE AND OPEN THE PASSENGER DOOR. I SCOOTED MYSELF TO THE DRIVER'S SIDE, TURNED ON THE VAN AND PUT THE GEAR IN DRIVE. THE SECURITY OFFICER GOT INSIDE THE VAN AS I STARTED MOVING FORWARD. AS I WAS STARTING TO DRIVE OFF I ADVISED THE SECURITY OFFICER HE WAS DOING VERY WRONG IN JUMPING INTO MY VAN [illegible] BY THIS TIME THE SECURITY OFFICER TOLD ME HE WOULD GET OFF IF I STOPPED THE VAN. BY THAT TIME THE SECURITY WAS TRYING TO TURN OFF THE VAN BY TRYING TO GET THE KEY BUT I PLACED MY BODY IN FRONT OF HIS GIVING HIM MY BACK. I DROVE ACROSS THE STREET TO A BANK AND STOP THE VAN SO THE SECURITY WOULD GET OFF. HE OPENED THE PASSENGER DOOR REACHING AT ME AND GRABBING THE COLLAR OF MY T-SHIRT TEARING IT OFF. I CONTINUED TO DRIVE OFF TO AVOID BEING ARRESTED. I DO WANT TO SAY THAT STEVE WAS NOT INVOLVED IN ANYTHING AND MY SON WAS SCARED AND CRYING. I HAVE TOLD DETECTIVE CARREJO THAT I DID NOT PUNCH OR ASSAULTED THE SECURITY GUARD IN ANY WAY. DETECTIVE CARREJO HAS SHOWN PHOTOS OF THE INJURED SECURITY AND I DO NOT KNOW HOW HE GOT THOSE INJURIES. DETECTIVE CARREJO HAS ASKED ME ABOUT A THEFT THAT HAPPENED AT THE H.E.B. STORE ON BOCA CHICA ABOUT TWO DAYS AGO. I HAVE TOLD DETECTIVE CARREJO I WAS INVOLVED IN THAT INCIDENT WHERE I TOOK TWO CARTONS OF RY

18

RY [illegible] ANYTHING [illegible] ALL THAT HAPPENED AT THE ALBERTSON'S STORE AND [illegible] OF MY OWN FREE WILL WITHOUT [illegible] SAY THAT I HAVE GIVEN MY STATEMENT VOLUNTARILY AND NO PROMISES OR THREATS WERE MADE AGAINST ME. I HAVE READ MY STATEMENT AND FIND IT TO BE TRUE AND CORRECT. RY

_____
WITNESS
Det. Esther A. Perez

_____
SIGNATURE OF ACCUSED

19